UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TED SALOIS, Pro Se,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MEDIFAST, INC.<br>JASON ENTERPRISES, INC.<br>JASON PHARMACEUTICALS, INC.,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 17cv1810-GPC (NLS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br>**[DKT. NO. 6.]** |

**I.　INTRODUCTION**

　　Pending before the Court is Defendant Medifast Inc., Defendant Jason Enterprises, Inc., and Defendant Jason Pharmaceuticals, Inc.'s (collectively "Defendants") Motion to Dismiss Plaintiff Ted Salois's ("Plaintiff") Complaint ("Complaint") pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 6. Plaintiff filed a Response in Opposition to Defendant's Motion ("Response"). Dkt. No. 8. Having reviewed the moving papers and applicable law, and for the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss.

## II. BACKGROUND

Plaintiff completed the Medifast diet plan and wrote a book reviewing his experiences titled *Medifast & Me & You* in September 2015. Dkt. No. 1 ("Compl.") ¶ 24. Plaintiff put his book up for sale on createspace.com, a subsidiary of Amazon.com. *Id.* In December 2015, counsel for Medifast sent Plaintiff a letter claiming that Plaintiff's use of the word "Medifast" in the book amounted to trademark infringement and demanded that Plaintiff remove the word "Medifast" from the book's title. *Id.* ¶ 31. Specifically, the letter contended that (1) the word "Medifast" was being used without permission, (2) plaintiff failed to include a trademark symbol after the word "Medifast"; and (3) the words "unauthorized evaluation" could not be easily seen. *Id.* Plaintiff remedied the latter two grievances by adding a trademark symbol and using a brighter font for the words "unauthorized evaluation," but Plaintiff insisted the word "Medifast" remain in the book's title. *Id.* ¶ 32. In March 2016, Plaintiff received a letter from an attorney at Defendant's law firm, Norton Rose Fulbright, alleging that Plaintiff's use of the trademark was improper. *Id.* ¶ 34. The letter demanded that Plaintiff stop offering the book to the public. *Id.* Plaintiff modified the book by modifying the cover and received a letter from another attorney at Norton Rose Fulbright demanding the newer version of the book be removed from the market as well. *Id.* ¶ 38. Counsel for Medifast contacted Plaintiff in spring of 2017 by phone and requested that Plaintiff change the book cover's font and wording. *Id.* ¶ 42. On April 27, 2017, counsel for Medifast sent Plaintiff a letter stating that Medifast did not and would not threaten to sue Plaintiff over Plaintiff's book. Dkt. No. 6-3 at 3. Specifically, Medifast's counsel clarified to Mr. Salois that Medifast "has never threatened to sue you [Mr. Salois] and to further assure you that Medifast has no current intention to pursue you over your book." *Id.*

Further, Defendants allegedly obstructed the availability of Salois's book to the buying public by issuing a DMCA claim that resulted in the removal of his book from Amazon.com. Compl. ¶ 33, 135. Plaintiff alleges this resulted in lost revenue and damage

to the author's goodwill and reputation. *Id.* ¶ 136. Plaintiff also alleges that Defendants threat of legal action resulted in the termination of a marketing contract with Michael Sedge, a marketing expert. *Id.* ¶ 141. This allegedly resulted in loss of income and damage to good will and reputation. *Id.*

On September 7, 2017, Plaintiff filed his Complaint against Defendants. Dkt. No. 1. Defendants filed the Motion to Dismiss Plaintiff's Complaint on November 16, 2017. Dkt. No. 6. Plaintiff filed the Response to Defendants' Motion on December 15, 2017. Dkt. No. 8. Defendants filed a Reply on January 4, 2018. Dkt. No. 9.

## III. LEGAL STANDARD

### A. 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of subject matter jurisdiction. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule12 (b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that

theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

655, 658 (9th Cir. 1992). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658.

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). However, the Ninth Circuit has declined to ensure that district courts advise pro se litigants of rule requirements. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-67 (9th Cir. 1986) ("Pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record . . . it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant").

## IV. DISCUSSION

### A. Mootness

Federal Rule of Civil Procedure 12(b)(1) permits a party to raise by motion the defense of "lack of subject matter jurisdiction." Fed. R. Civ. P.12 (b)(1). In this Circuit, a "mootness claim" is properly raised with a 12(b)(1) motion. *See Gemtel Corp. v. Community Redevelopment Agency*, 23 F.3d 1542, 1544 n. 1 (9th Cir. 1994) (finding "mootness" and "ripeness" properly challenged under Rule 12(b)(1)). A claim is moot when "it has lost its character as a present, live controversy," for instance, when an administrative agency has performed the action sought by a plaintiff and the federal court has no authority grant effective relief. *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). The court does not have jurisdiction over a moot claim. *Id.* The test for mootness applied to a claim for declaratory relief is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

5

17cv1810-GPC (NLS

warrant the issuance of a declaratory judgment." *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Defendants argue that this Court lacks subject matter jurisdiction over the declaratory judgment claim because Plaintiff's claim fails to raise an actual case or controversy. Dkt. No. 6 at 2. Specifically, Defendants contend that Medifast allowed Plaintiff to sell his book. Dkt. No. 6-1 at 9-10. Defendants posit that Medifast sent Plaintiff a letter on April 27, 2017 stating Medifast did not and will not threaten to sue Plaintiff over Plaintiff's book. *Id.* at 10. Defendants argue that the letter should have resolved all potential grievances related to the instant action. *Id.* Moreover, Defendants contend that Plaintiff admitted to being able to sell the book. *Id.* Defendants posit no actual case or controversy exists, and Plaintiff should not be able to proceed in the instant action. *Id.*

Plaintiff argues that Defendants' continued refusal to accept Plaintiff's usage of the Medifast symbol as fair use demonstrates a potential for future controversy. Dkt. No. 8 at 5. Plaintiff intends to use Medifast's trademark name in the future, and Plaintiff argues that Defendants' non-acceptance of Plaintiff's usage creates an imminent case or controversy. *Id.*

The Court finds that Plaintiff's claim is moot and consequently the Court lacks subject matter jurisdiction over this claim. Plaintiff fails to mention Defendants' letter to Plaintiff from April 27, 2017.[1] In the letter, counsel for Defendant Medifast makes it clear that "Medifast has never threatened to sue [Plaintiff] and to further assure [Plaintiff] that Medifast has no current intention to pursue [Plaintiff] over [Plaintiff's] book." Dkt. No. 6-3 at 3-4. The letter goes on to state: "We understand that you want to continue to use the name and we do appreciate the steps you have taken to make clear that your book is not

---

[1] Rule 12(b)(1) of the Federal Rules of Civil Procedure allows District Courts to weigh extrinsic evidence beyond the scope of what is stated in a plaintiff's complaint. Fed. R. Civ. P. 12 (b)(1); *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988).

affiliated with or sponsored by Medifast. We hope that you will continue to cooperate to avoid any confusion in the marketplace as to whether your publications have any affiliation or sponsorship with Medifast." *Id.*

Defendant Medifast has made it clear that they do not intend on pursuing legal action against Plaintiff and acknowledges Plaintiff may continue to use Medifast's mark. The Supreme Court held in *Nike* that a promise not to sue is sufficient to resolve case or controversy. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013) (covenant not to sue issued by athletic footwear manufacturer rendered case moot because it was absolutely clear that manufacturer would not resume enforcement efforts). Here, like in *Nike*, Defendants' letter to Plaintiff is a functional "covenant not to sue" because in both situations, defendants made unilateral assurances guaranteeing they would not pursue legal action. 568 U.S. 85 (2013). Moreover, the Supreme Court has noted that "[t]he agreement of the plaintiff is not required to moot a case." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 681 (2016). Whether Plaintiff acknowledges Defendants' covenant not to sue is immaterial— Defendant's letter makes it clear that they do not intend to resume enforcement efforts on their trademark. For these reasons, the Court accepts Defendants' letter to Plaintiff as a "covenant not to sue" and finds that there is no live Article III case or controversy presented in the instant action because plaintiff has not alleged a "substantial controversy . . . of sufficient immediacy and reality" to warrant the issuance of a declaratory judgment. *See Bayer*, 861 F.3d at 867; *Campbell-Ewald* 136 S. Ct. at 681 ("If the defendant is willing to give the plaintiff everything he asks for, there is no case or controversy to adjudicate, and the lawsuit is moot."). Accordingly, the Court concludes that it lacks subject matter jurisdiction under the mootness doctrine and **GRANTS** Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment cause of action.

## B. Failure to State a Claim for Which Relief Can be Granted

### 1. UCL and Lanham Act Claims

"[T]o state a claim for a violation of the [California UCL], a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair." *Levine v. Blue Shield of Cal.,* 189 Cal. App. 4th 1117, 1136 (2010). Each adjective captures a "separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal marks omitted). The UCL is "intentionally broad to give the court maximum discretion to control whatever new schemes may be contrived, even though they are not yet forbidden by law." *People ex. rel. Renne v. Servantes*, 86 Cal. App. 4th 1081, 1095 (2001).

Plaintiff argues that Defendant's requests that Plaintiff cease use of Medifast's name violated the Lanham Act as unfair competition. While Plaintiff has not adequately articulated which prong ("unfair" or "unlawful") his UCL claim is based on, the Court concludes that Plaintiff fails to allege a claim under either prong.

California appellate court opinions differ as to what constitutes an "unfair" business practice under the UCL. *Martinez v. Welk Group, Inc.*, No. 09CV2883, 2012 WL 5373415, at *13 (S.D. Cal. Oct. 20, 2012) (citing *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 639-48 (Cal. Ct. App. 2006) (noting the split in authority)). Some courts define "unfair" as "prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 113 Cal. Rptr. 2d 399, 415 (Cal. Ct. App. 2001)). "The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Id.* (citing *Bardin*, 39 Cal. Rptr. 2d at 636). Here, plaintiff has not adequately alleged that any conduct by Defendants was "immoral, unethical, oppressive, or unscrupulous." Defendants conduct had substantial

utility—the attempted preservation of their intellectual property rights—while any harm was minimal as Salois continues to be able to sell his book. Furthermore, plaintiff has not demonstrated a violation tethered to a "public policy" and indeed it appears Defendants' conduct was in *support* of the public policy in favor of protecting intellectual property rights. *See* Dkt. No. 6-1 at 13 ("The conduct complained of by Plaintiff was solely intended to preserve Medifast's intellectual property rights and avoid marketplace confusion, as clearly stated in Medifast's letters to Plaintiff.").

Further, plaintiff fails to plead facts adequately alleging that Defendant's conduct violated an "unlawful" activity.[2] Citing a policy statement in *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 524 (D.C. Cir. 1985), plaintiff argues—based on an alleged violation of the Lanham Act[3]—that Congress intended to afford protection to trademark users against unfounded lawsuits. Defendant correctly points out that this statement is limited to the context of the interpretation of a fee provision in the Lanham Act, 15 U.S.C. § 1117(a), which provides a court with discretion to award fees to a prevailing party. Dkt. No. 6-1 at 12-13. The Court concludes that Plaintiff has not alleged a plausible claim for relief under the Lanham Act by failing to cite a relevant portion of the Act for which he would be entitled to relief. Thus, plaintiff has also failed to allege that Defendants' conduct constituted an "unlawful" violation of the Lanham Act. Accordingly, the Court will **GRANT** defendant's motion to dismiss Plaintiff's second cause of action alleging violations of the UCL and Lanham Act.

---

[2] The Lanham Act provides "national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985).

[3] Plaintiff's citation to *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1751 (2014) is inapposite. There, the Supreme Court interpreted a fee-shifting provision authorizing attorney's fees, an issue irrelevant to this case. *See id.*

### 2. Intentional Interference with a Contractual Relationship and Intentional Interference with Prospective Economic Advantage

Plaintiff alleges that Medifast intentionally interfered with the contractual relationships with (1) Amazon.com ("Amazon") and (2) his marketing agent, Michael Sedge.[4] He further alleges that defendants may be liable for intentional interference with prospective economic advantage.[5]

Defendants argues that plaintiff has failed to plead facts that defendant intended to disrupt the Amazon contracts and that plaintiff has failed to include factual allegations evidencing he was harmed by this conduct. Dkt. No. 6-1 at 18. Further, Defendants argue that plaintiff has failed to allege factual support that Medifast's conduct caused the termination of his commission-only contract with marketing agent Michael Sedge. *Id.* at 19. Finally, Defendant argues that plaintiff has failed to establish that Medifast engaged in wrongful conduct and has consequently not plausibly pled a claim for intentional interference with prospective economic advantage. *Id.* at 20.

Plaintiff's opposition does not substantively address these claims. *See generally* Dkt. No. 8 at 6-10 (responding only to Defendant's 12(b)(6) arguments regarding the UCL and Lanham Act unfair competition claim). By failing to respond to Defendants' arguments on these claims, plaintiff has failed to oppose the motion to dismiss these claims.

---

[4] Under California law, a "stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). To show intentional interference with a contractual relationship, a plaintiff must plead: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

[5] A defendant may be liable for intentional interference with prospective economic advantage where plaintiff shows: "(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008).

Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate. *See, e.g.*, *Silva v. U.S. Bancorp,* No. 5:10–cv–1854, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition.") (citations omitted); *Qureshi v. Countrywide Home Loans, Inc.,* No. 09–4198, 2010 WL 841669, at *9 & n. 2 (N.D. Cal. Mar. 10, 2010) (citing *Jenkins v. County of Riverside,* 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)) (dismissing claims as abandoned where the plaintiff did not oppose dismissal).

However, in light of the plausibility of these two claims and plaintiff's pro se status, the Court will dismiss these claims without prejudice. Further, the Court—finding that leave to amend would not be futile—will grant Plaintiff leave to amend to raise these causes of action in an amended complaint. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("Generally [Federal Rule of Civil Procedure] 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality.") (internal quotation marks omitted).

## V. CONCLUSION

Based on the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 6) is **GRANTED**, and Plaintiff's claims are **DISMISSED**. To the extent that Plaintiff is able to cure the noted deficiencies, Plaintiff may file an amended complaint within **30 days** of the date this order is docketed.

**IT IS SO ORDERED.**

Dated: February 28, 2018

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge